IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

PAMELA GREACEN, and
ARTHUR L. BUSER, JR.

      Plaintiffs,

v.

CASE NO.:

THE TOWN OF REDINGTON BEACH,
a municipality of the State of Florida,

      Defendant.

_____/

## COMPLAINT

Plaintiffs, PAMELA GREACEN, and ARTHUR L. BUSER, JR., by and through their undersigned counsel, sue Defendant, THE TOWN OF REDINGTON BEACH (the "Town"), and make the following allegations:

1. This is an action for declaratory relief and monetary damages that exceed $15,000, exclusive of interest and attorney's fees.

2. Plaintiffs own beach front property located within the Town at 16120 Gulf Boulevard, Redington Beach, FL, 33708 that fronts the Gulf of Mexico (the "Property"). The Property is more particular described by Exhibit A.

3. The western boundary of the Property that fronts the Gulf of Mexico extends all the way to the mean high water line.

4. The Town is a municipality of the State of Florida and is located in Pinellas County.

5. On June 6, 2018, the Town enacted Ordinance 2018-03 (the "Customary Use Ordinance"). Exhibit B.

6. Without any supporting evidence, the Customary Use Ordinance declared that the

public's access and recreational uses on all beaches in the Town has been ancient, reasonable, without interruption, and free from dispute.

7. Based on these findings, the Customary Use Ordinance makes it a violation to "impede or interfere with the right of the public at large, including the residents of and visitors to the town, to utilize the dry sand areas of the beach that are owned by private entities for the uses as described in subsection (d)."

8. Subsection (d) lists the following activities as allowable uses on private beach front property by members of the public:

   a. Traversing the beach;

   b. Sitting on the sand, in a beach chair, or on a beach towel or blanket;

   c. Sunbathing;

   d. Picnicking;

   e. Fishing;

   f. Swimming or surfing off the beach;

   g. Placement of surfing or fishing equipment for personal use; and

   h. Building sand creations unless prohibited by § 4-9 of this code concerning sea turtles.

9. Further, subsection (c) of the Customary Use Ordinance states that the public may not make such uses in a buffer zone extending 15 feet from to the toe of a dune or from any privately-owned permanent habitable structure located on the beach, whichever is more seaward, "except as is necessary to utilize an existing or future public beach access point for ingress or egress to the beach."

10. Despite such buffer zone requirements, the Town maintains a public bench on Plaintiffs' Property.

11. The public bench is located within the buffer zone described above and is not located within a public right of way.

12. By maintaining the public bench, the Town is inviting members of the public to traverse and occupy Plaintiffs' Property.

13. All conditions precedent for the maintenance of this action have occurred.

## COUNT I
## DECLARATORY JUDGMENT

14. Plaintiffs incorporate paragraphs two through thirteen.

15. This is an action for a judgment declaring the Customary Use Ordinance invalid and void for being inconsistent with Florida statutory law.

16. Before the Customary Use Ordinance was enacted, the Florida Legislature signed a bill creating Fla. Stat. § 163.035 (HB, Chapter 2018-94, Laws of Florida, Section 10)(effective July 1, 2018) which states that "[a] governmental entity may not adopt or keep in effect an ordinance" based on a public customary use of "any portion of a beach above the mean high-water lines" unless the ordinance "is based on a judicial determination affirming recreational customary use on such beach." Fla. Stat. § 163.035(2).

17. In order to obtain such a judicial declaration, the statue requires that the following procedures be followed:

> (3) NOTICE OF INTENT TO AFFIRM RECREATION PUBLIC USE ON PRIVATE PROPERTY; JUDICIAL DETERMINATION.—A governmental entity that seeks to affirm the existence of a recreational customary use on private property must follow the procedures set forth in this subsection.
>
> (a) Notice.—The governing board of a governmental entity must, at a public hearing, adopt a formal notice of intent to affirm the existence of a recreational customary use on private property. The notice of intent must specifically identify the following:

3

1. The specific parcels of property, or the specific portions thereof, upon which a customary use affirmation is sought;

2. The detailed, specific, and individual use or uses of the parcels of property to which a customary use affirmation is sought; and

3. Each source of evidence that the governmental entity would rely upon to prove a recreational customary use has been ancient, reasonable, without interruption, and free from dispute.
The governmental entity must provide notice of the public hearing to the owner of each parcel of property subject to the notice of intent at the address reflected in the county property appraiser's records no later than 30 days before the public meeting. Such notice must be provided by certified mail with return receipt requested, publication in a newspaper of general circulation in the area where the parcels of property are located, and posting on the governmental entity's website.

(b) Judicial determination.—

1. Within 60 days after the adoption of the notice of intent at the public hearing, the governmental entity must file a Complaint for Declaration of Recreational Customary Use with the circuit court in the county in which the properties subject to the notice of intent are located. The governmental entity must provide notice of the filing of the complaint to the owner of each parcel of property subject to the complaint in the same manner as is required for the notice of intent in paragraph (a). The notice must allow the owner receiving the notice to intervene in the proceeding within 45 days after receiving the notice. The governmental entity must provide verification of the service of the notice to the property owners required in this paragraph to the court so that the court may establish a schedule for the judicial proceedings.

2. All proceedings under this paragraph shall be de novo. The court must determine whether the evidence presented demonstrates that the recreational customary use for the use or uses identified in the notice of intent have been ancient, reasonable, without interruption, and free from dispute. There is no presumption regarding the existence of a recreational customary use with respect to any parcel of property, and the governmental entity has the burden of proof to show that a recreational customary use exists. An owner of a parcel of property that is subject to the complaint has the right to intervene as a party defendant in such proceeding.

Fla. Stat. § 163.035(3).

18. The Law further provides that it "does not apply to a governmental entity with an ordinance or rule that was adopted and in effect on or before January 1, 2016, and does not deprive a governmental entity from raising customary use as an affirmative defense in any proceeding challenging an ordinance or rule adopted before July 1, 2018." Fla. Stat. § 163.035(4).

19. The Town did not have any customary use ordinance in effect on or before January 1, 2016.

20. Thus, the Customary Use Ordinance is inconsistent with state law because it was enacted after January 1, 2016 without the required "judicial determination" more fully set out in Fla. Stat. § 163.035(3).

21. Plaintiffs have a bon fide, actual, present practical need for a declaration concerning the validity of the Customary Use Ordinance.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment declaring the Customary Use Ordinance void, awarding costs of the suit to Plaintiff, and for such other and further relief this Court deems appropriate.

## COUNT II
## FACIAL TAKINGS CLAIM

22. Plaintiffs incorporate paragraphs two through thirteen.

23. This is an action to declare the Customary Use Ordinance void on the grounds that, on its face, it violates Article X, Section 6(a) of the Florida Constitution.

24. Under Article X, Section 6(a) of the Florida Constitution, the government may not engage in or authorize a physical invasion of private land by the public without providing just compensation.

5

25. An uncompensated governmentally authorized physical invasion or occupation of private land by the public is a *per se* taking in the nature of a public easement or right-of-way.

26. The Customary Use Ordinance, on its face, authorizes the physical invasion and occupancy by the general public of the dry sandy beach portions of the entire Town, including Plaintiffs' Property, without just compensation.

27. Thus, the Customary Use Ordinance facially violates Article X, Section 6(a) Florida Constitution.

28. This facial claim against the Customary Use Ordinance is ripe for judicial review and became ripe upon enactment of the Customary Use Ordinance.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment declaring the Customary Use Ordinance void, awarding attorney's fees and costs of the suit to Plaintiffs, and for such other and further relief this Court deems appropriate.

## COUNT III
## AS APPLIED TAKINGS CLAIM

29. Plaintiffs incorporate paragraphs two through thirteen.

30. The Town's enactment of the Customary Use Ordinance and its maintenance of the public bench constitutes an unlawful taking of property without full compensation in violation of Article X, Section 6(a) Florida Constitution.

31. The claim for a taking is ripe for adjudication.

32. The property rights and interests that Plaintiffs lost because of the Town's enactment of the Customary Use Ordinance and its maintenance of the public bench are fundamental and inherent in their property ownership and rights as owners of the Property.

33. The Customary Use Ordinance has destroyed the private nature of the beach Property by rendering it public and thereby eliminating all viable use of the Property, and caused

damage to the value of property in limiting exclusivity and privacy as well as development potential.

34.     The City acted to gain a public benefit by regulatory actions in lieu of payment to Plaintiffs for such public benefit.

35.     As a direct and proximate result of the actions of the Town in enacting the Customary Use Ordinance and maintaining the public bench, Plaintiffs have lost all economically beneficial use of their property and its reasonable investment backed expectations for the property have been frustrated.

36.     The Town has neither paid nor offered payment to Plaintiffs for the value of the Property taken or any other related damages Plaintiffs have suffered.

WHEREFORE, Plaintiffs request this Court: determine that the Town has taken Plaintiffs' Property without paying full compensation; determine the value of the property and the date it was taken; determine that Plaintiffs are entitled to damages for the denial of the use of their Property, prejudgment interest, costs, attorneys' fees, and such other and further relief as the Court determines appropriate.

Submitted this 29th day of October, 2018.

/s /Paul Crochet
Timothy W. Weber, Esq.; FBN: 086789
timothy.weber@webercrabb.com
lisa.willis@webercrabb.com
Paul M. Crochet, Esq.; FBN: 111942
paul.crochet@webercrabb.com
jesse.wagner@webercrabb.com
Weber, Crabb & Wein, P.A.
5453 Central Avenue
St. Petersburg, FL 33710
Phone No. (727) 828-9919
Fax No. (727) 828-9924
Attorneys for Plaintiffs

Prepared by:
Kenneth G. Arsenault, Jr.
Title Agency of Florida, Inc.
19535 Gulf Boulevard, Suite C
Indian Shores, Florida 33785
Parcel ID 05/31/15/00000/430/0100
File Number: 11-1683
Consideration: $1,265,000.00

## WARRANTY DEED

THIS INDENTURE, made this 18 day of November 2011, between EUGENE J. CAMALI A MARRIED MAN, JOINED BY HIS SPOUSE NADA CAMALI, hereinafter called the Grantors, to ARTHUR L. BUSER, JR. AND PAMELA H. GREACEN, HUSBAND AND WIFE, hereinafter called the Grantees, having the principal address of: 16120 Gulf Blvd., Redington Shores, FL. 33708

WITNESSETH: That the Grantor, for and in consideration of the sum of Ten Dollars ($10.00), and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, by these presents does grant, bargain, sell, alien, remise, release, enforce, convey and confirm unto the Grantee, all that certain parcel of land lying and being in the County of Pinellas, State of Florida, more particularly described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

SUBJECT TO TAXES FOR THE YEAR 2012 AND SUBSEQUENT YEARS
SUBJECT TO RESTRICTIONS AND EASEMENTS OF RECORD.

TO HAVE AND TO HOLD the same in fee simple forever.

and the Grantor hereby covenants with said Grantee that Grantor is lawfully seized of said land in fee simple; that Grantor has good right and lawful authority to sell and convey said land; that Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever; and that said land is free of all encumbrances.

Page 1 of 2

Exhibit A to Plaintiffs' Complaint



Page 2 of 2

Continuation of signature page for deed between EUGENE J. CAMALI A MARRIED MAN JOINED BY HIS SPOUSE NADA CAMAMI as Grantors and ARTHUR L. BUSER, JR. AND PAMELA H. GREACEN, as Grantees for that certain real property have a street address of 16120 Gulf Blvd., Redington Shores, Florida 33708

IN WITNESS WHEREOF, Grantor has hereunto set Grantor's hand and seal the day and year first above-written.

SIGNED SEALED AND DELIVERED
IN OUR PRESENCE:

Witness #1: _Michael H. Lynch_

Witness #2: _Ory Aversach_

EUGENE J. CAMALI
ADDRESS: 1020 GULF BLVD
BELLEAIR SHORES, FL 33786

NADA CAMALI
1020 Gulf Blvd.
BELLEAIR SHORES, FL. 33786

STATE OF _Florida_
COUNTY OF _Pinellas_

The foregoing instrument was acknowledged before me this _18_ day of _November_ 2011 by EUGENE J. CAMALI AND NADA CAMALI, who produced _Drivers License_ as identification.

Notary Public
My commission expires:



AMY K. AUERBACH
MY COMMISSION # DD 728791
EXPIRES: December 19, 2011
Bonded Thru Notary Public Underwriters

**EXHIBIT "A"**

Northwesterly 75 feet of the following described tract of land:

Beginning at the monument at the most Northerly corner of Lot 1, Block 10, First Addition to Lone Palm Beach, run thence North 53° 01' West along West right-of-way of County Highway No. 17 a distance of 1871.5 feet to a Point of Beginning; thence from said Point of Beginning continuing North 53° 01' West 150 feet along said West right-of-way of County Highway No. 17; thence South 36° 59' West to waters of Gulf of Mexico; thence Southeastwardly meandering the waters of Gulf of Mexico to a point on a line South 36° 59' West of Point of Beginning; thence North 36° 59' East to Point of Beginning; said tract of land lying in Section 5, Township 31 South, Range 15 East, Pinellas County, Florida.

Less that part of the above described property:

Lying within 36.50 feet Southerly of a center line of construction on State Road 699, Section 15140, said center line of construction being described as follows:

Begin on the Southwesterly extension of the East line of Lot 15, Block 16, Second Addition to Redington Beach Homes, in Section 5, Township 31 South, Range 15 East, as per plat thereof recorded in Plat Book 23, Page 40, as per Public Records of Pinellas County, Florida; at a point 67.05 feet South 37° 58' 45" West of the Southeast corner of said Lot 15, said corner being 103.76 feet South 37° 58' 45" West of the Northeast corner of said Lot 15; run thence North 52° 02' 15" West 356.01 feet; thence North 37° 57' 48" East 3.50 feet to begin center line of construction at Station 888 + 00.88 also being the beginning of a curve concave to the Southwesterly having a radius of 5729.58 feet; thence Northwesterly along said curve 146.09 feet through a central angle of 1° 27' 39" to the end of said curve thence North 53° 29' 54" West 128.46 feet to the beginning of a curve to the Northeasterly having a radius of 5729.58 feet; thence Northwesterly along said curve 146.09 feet thru a central angle of 1° 27' 39" to the end of said curve at Equation Station 892 + 21.52 bk = Station 892 + 21.45 ahead; thence North 52° 02' 15" West 618.93 feet to the beginning of a curve concave to the Northeasterly having a radius of 5729.58 feet; thence Northwesterly along said curve 939.44 feet thru a central angle of 9° 23' 40" to the end of said curve at Equation Station 907 + 79.82 bk = 357 + 58.29 ahead; thence North 42° 38' 35" West 241.75 feet to end right of way Station 260+ 00.04, said Station being 49.81 feet South 47° 09' 25" West of the Southwest corner of Lot 11 of C. E. Redingtons Replat in Section 5, Township 31 South, Range 15 East, as per plat thereof recorded in Plat Book 24, Page 91, Public Records of Pinellas County, Florida.

**Town of Redington Beach**

ORDINANCE NO. 2018 -03

AN ORDINANCE OF THE TOWN OF REDINGTON BEACH, FLORIDA, AMENDING CHAPTER 13 OF THE TOWN CODE; CONFIRMING THE PUBLIC'S LONG-STANDING CUSTOMARY USE OF THE DRY SAND AREAS OF THE TOWN'S BEACHES, CLARIFYING WHICH USES ARE PERMITTED AND PROHIBITED FOR MEMBERS OF THE PUBLIC ON THE DRY SAND AREAS OF THE BEACH THAT ARE OWNED BY PRIVATE ENTITIES; PROVIDING FOR A BUFFER AREA AROUND PRIVATE PERMANENT STRUCTURES; PROVIDING FOR RELOCATION OF BEACH-RELATED REGULATIONS; PROVIDING FOR ENFORCEMENT; MAKING RELATED FINDINGS; PROVIDING FOR CODIFICATION, SEVERABILITY, AND AN EFFECTIVE DATE.

**WHEREAS**, after the United States acquired Florida from Spain in the early 1800's, the lands under the navigable waters, including the shores, were held by the United States for the benefit of the people; and

**WHEREAS**, when Florida gained statehood, it was granted authority to hold, in its sovereign capacity, title to the beds of navigable waters, including the shore and the space between high and low water marks, in trust for the people of the state, who have rights of navigation, commerce, fishing, boating and other public uses; and

**WHEREAS**, the Town of Redington Beach (the Town) was incorporated as a Florida municipality in 1935 and its Charter was adopted in 1945; and

**WHEREAS**, the Town's founder, Charles E. Redington, his wife Hazel, and their five children wintered in the area in the 1920s from their home in Tucer, Indiana; and

**WHEREAS**, the Redingtons eventually moved to the area in 1925, and in 1935 were the first to construct a private home in the Town; and

**WHEREAS**, the Town has, since its inception, been a primarily residential community of approximately 1 square mile in size, consisting of beachfront single-family dwellings and, in more recent times condominiums, located on the beautiful Gulf of Mexico, with public beach-access ramps for persons to gain easy access to the Town's beaches; and

**WHEREAS**, historical records, photographic evidence, and testimony of citizens of the Town, confirm the public at large, including residents of and visitors to the Town, have utilized the dry sand areas of all of the beaches in the Town for recreational purposes since well before 1970 and indeed since time immemorial; and

**WHEREAS**, Article X, § 11 of the Florida Constitution provides that the state holds the land

Exhibit B to Plaintiffs' Complaint

seaward of the mean high-water line in trust for the people, and the public has a right of access along Florida's beaches and shorelines below the mean high-water line; and

**WHEREAS**, Florida Statutes §187.201(8)(b)(2) requires the state to ensure "the public's right to reasonable access to beaches"; and

**WHEREAS**, Under Florida's Beach and Shore Preservation Act, when public money is used to fund the expansion of a beach, the added sand becomes property of the state, free for public use. Beach and Shore Preservation Act, Florida Statutes § 161.011, et seq.; and

**WHEREAS**, the Town has long sought to safeguard the customary use of its beaches at the local law level, having adopted § 4-3 (animals prohibited at beaches) § 4-9 (sea turtles), § 6-134 (beach access and construction) § 13-4 (Beach Park rules), § 15-57 (adoption of state beach and shore regulations), and § 21-2 (operation of vehicles on beaches) of the Town Code, all aimed at affording a balance of acceptable use between owners of private properties along the beaches and beach visitors and all in effect prior to January 1, 2016; and

**WHEREAS**, Chapter Law 2018-94 created Florida Statutes § 163.035, creating a regulatory scheme for local governmental establishment of recreational customary use ordinances; and

**WHEREAS**, this new law creates significant new and costly procedural requirements for the adoption of any new customary use ordinances after July 1st 2018; and

**WHEREAS**, this new law is not applicable to ordinances in existence prior to January 1st 2016 and allows local governments to raise customary use as an affirmative defense in proceedings challenging any beach regulation ordinance adopted prior to July 1st 2018; and

**WHEREAS**, the recreational use of the dry sand areas of all of the beaches in the Town is a treasured asset of the Town which is utilized by the public at large, including residents and visitors to the Town; and

**WHEREAS**, the use of the dry sand areas of all of the beaches in the Town are a vital economic asset to the Town, Pinellas County, and the State of Florida; and

**WHEREAS**, the use of the dry sand areas of the Town's beaches has been ancient, exercised without interruption, peaceable and free from dispute, reasonable, certain, obligatory, and consistent with other customs or other law; and

**WHEREAS**, the Florida Supreme Court, in *City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73, 75 (Fla. 1974), expressly recognized the doctrine of customary use in the state of Florida; and

**WHEREAS**, the federal district court for the Northern District of Florida, in *Alford v. Walton County*, 2017 WL 8785115, (N.D. Fla. November 22, 2017), the most recent case to consider a Florida local government's authority to maintain customary use ordinances, confirmed that such ordinances were within the right of local governments to adopt and maintain; and

**WHEREAS**, in light of this long and continuous use, the Board of Commissioners finds that the doctrine of customary use has applied to all of the beaches in the Town since even before the Town's founding; and

**WHEREAS**, the Town desires to ensure that the public's long-standing customary use of the dry sand areas of all of the beaches in the Town for recreational purposes is protected; and

**WHEREAS**, the Town recognizes, acknowledges, and protects the rights of private property owners to enjoy and utilize their property; and

**WHEREAS**, the buffer zone set forth in this Ordinance is not intended to constitute an abandonment of the public's right, based upon its long-standing customary use, to utilize the dry sand areas of the Town's beaches for recreational purposes in such buffer zone, but rather is provided voluntarily and solely as an accommodation to the private property rights of those individuals who own property on which a portion of the dry sand areas of the beach is located; and

**WHEREAS**, the owners of property that contains a portion of the dry sand areas of the Town's beaches may, under the Town's pre-existing customary use rules and under this Ordinance, still make any use of their property which is consistent with such customary public uses and not calculated to interfere with such uses; and

**WHEREAS**, while the Town's Board of Commissioners finds that its current ordinances provide an effective protection of the customary use of the Town's beaches by residents and visitors, it also finds that it is in the best interests of the Town, its residents and visitors, to further bolster and clarify this pre-existing regulatory scheme by the adoption of this Ordinance.

**NOW, THEREFORE BE IT ORDAINED** by the Board of Commissioners of the Town of Redington Beach, Florida, that:

**Section 1.** A new Article III of Chapter 13 (Parks and Recreation) of the Redington Beach Town Code, entitled Beaches, and initially consisting of § 13-30, is hereby created as follows:

ARTICLE III. – BEACHES

**Sec. 13-30. – Customary use of dry sand beach.**

(a) The public's long-standing customary use of the dry sand areas of all of the beaches in the town for recreational purposes is hereby recognized and protected. Except as stated in subsection (c) below, no individual, group, or entity shall impede or interfere with the right of the public at large, including the residents of and visitors to the town, to utilize the dry sand areas of the beach that are owned by private entities for the uses as described in subsection (d).

(b) The dry sand area of the beach is defined as the zone of unconsolidated material that extends landward from the mean high-water line to the place where there is marked change in material or physiographic

form, or to the line of permanent vegetation, usually the effective limit of storm waves, whichever is more seaward.

(c) Members of the public at large shall not utilize a fifteen (15) foot buffer zone located seaward from the toe of the dune or from any privately-owned permanent habitable structure that is located on, or adjacent to, the dry sand areas of the beach, whichever is more seaward, except as is necessary to utilize an existing or future public beach access point for ingress and egress to the beach. The foregoing buffer zone requirement shall not apply to emergency service workers, including police, fire and paramedic personnel, nor to other governmental personnel exercising lawful duties, nor to persons invited or authorized to be within the zone by the private land owner.

(d) The following are the sole uses permitted for members of the public on the dry sand areas of the beach that are owned by private entities:

>(1) traversing the beach;
>
>(2) sitting on the sand, in a beach chair, or on a beach towel or blanket;
>
>(3) using a beach umbrella that is seven (7) feet or less in diameter;
>
>(4) sunbathing;
>
>(5) picnicking;
>
>(6) fishing;
>
>(7) swimming or surfing off the beach;
>
>(8) placement of surfing or fishing equipment for personal use; and
>
>(9) building sand creations unless prohibited by § 4-9 of this code concerning sea turtles.

(e) The following are specifically prohibited for members of the public on the dry sand areas of the beach that are owned by private entities: use of tobacco; possession of animals; erection or use of tents.

(f) Activities on the beach are governed by § 4-9 (sea turtles), § 6-134 (beach access and construction) § 13-4 (Beach Park rules), and § 15-57 (adoption of state beach and shore regulations) of this code, and such other regulations as are now or may in the future be included in this article. Violations of this article are punishable as provided by § 1-14 of this code.

**Section 2.**   Section 4-3 of the Redington Beach Town Code is hereby relocated to Article III of Chapter 13 and renumbered as follows:

**Sec. 4-3 13-31. - Animals prohibited at beaches, parks and recreation areas.**

(a) It is unlawful for any person to bring or have or ride or allow on any beach or in the water adjacent thereto any animal.

(b) It shall be unlawful for any person to bring or have or ride or allow on municipally owned parks or recreation areas any animal. The town shall post notice of the restriction in this section at the entranceway of each municipal park or recreation area, and, if there is no designated entranceway, at any other location convenient to public observation.

**Section 3.** Section 21-2 of the Redington Beach Town Code is hereby relocated to Article III of Chapter 13 and renumbered as follows:

**Sec. 21-2 13-32. - Operation of vehicles on beaches.**

(a) It is unlawful for any person directly or indirectly to use or operate or to allow another to use or operate upon, on or along the gulf beach, or upon any beach or shoreline or waters adjacent thereto, within the town limits, any motor vehicle, unless application in writing showing reasonable necessity therefor shall first have been made to the board of commissioners and a special written approval is obtained from the town.

(b) The following shall be excepted from the provisions of this section:

    (1) Municipal vehicles or equipment, any vehicle in such area for an emergency purpose for the public safety or general welfare, or any vehicle or equipment authorized by the town to be in such area for a public purpose.

    (2) Mechanical equipment necessary and temporarily being used in such area for authorized improvements upon private or public property, for the construction of which improvements a permit has been applied for and granted by the town in the manner required by this Code and other ordinances of the town.

**Section 4.** For purposes of codification of any existing section of the Redington Beach Code herein amended, words **underlined** represent additions to original text, words stricken are deletions from the original text, and words neither underlined nor stricken remain unchanged.

**Section 5.** If any section, subsection, sentence, clause, provision or word of this Ordinance is held unconstitutional or otherwise legally invalid, same shall be severable and the remainder of this

Ordinance shall not be affected by such invalidity, such that any remainder of the Ordinance shall withstand any severed provision, as the Board of Commissioners would have adopted the Ordinance and its regulatory scheme even absent the invalid part.

Section 6.    The Codifier shall codify the substantive amendments to the Redington Beach Town Code contained in Sections 1 through 3 of this Ordinance as provided for therein, and shall not codify the exordial clauses nor any other sections not designated for codification.

Section 7.    This Ordinance shall become effective immediately upon final passage and adoption.

**PASSED AND ADOPTED** by the Board of Commissioners of the Town of Redington Beach, Pinellas County, Florida, on this 6th Day of June, 2018.

ATTEST:

Missy Clarke, CMC Town Clerk

Nick Simons, Mayor

|  | Motion | Seconded | Aye | Nay | Absent |
|---|---|---|---|---|---|
| **Commissioner Kornijtschuk** |  |  | X |  |  |
| **Commissioner Dorgan** |  | X | X |  |  |
| **Commissioner Steiermann** |  |  | X |  |  |
| **Vice Mayor Will** | X |  | X |  |  |
| **Mayor Simons** |  |  | X |  |  |